IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **FELICIA CHATMAN** <br><br>               **Plaintiff,** <br><br> v. <br><br> **WELLSTAR HEALTH SYSTEM, INC.** <br><br>               **Defendant.** | **1:05-cv-3217-WSD-RGV** |

## OPINION AND ORDER

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [42], Defendant's Motion for Summary Judgment [34], and Plaintiff Felicia Chatman's ("Chatman") Objections to the R&R [43]. Chatman objects only to the Magistrate's finding that two of Defendant Wellstar Health System, Inc.'s ("Wellstar") reasons for refusing to hire her were not pretextual.

In this action, Chatman alleged that Wellstar refused to hire her for a "Weekend Option" position because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981.

In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of the portions of the R&R to which Chatman has objected. The Court has reviewed the remainder of the R&R for plain error. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983). Chatman does not object to the Magistrate Judge's findings of fact in the R&R and, finding no plain error, the Court adopts the facts set forth in the R&R.

## I.     BACKGROUND

Wellstar operates a system of Atlanta-area health care facilities. One of these is an Infusion Center, which is an outpatient facility that administers antibiotics, chemotherapy, and other intravenous medications.

Chatman is a black female. In July of 2004, she applied to work at the Infusion Center. Chatman noted six years of nursing experience on her application, including approximately four years of experience in infusion therapy.

On August 16, 2004, Kathi Mansfield, the Infusion Center's Administrative Coordinator ("Mansfield"), hired Chatman as a "PRN" nurse. PRN nurses work at their convenience and according to Wellstar's needs. Wellstar does not guarantee any hours for PRN nurses, and they are permitted to decline requests to work without penalty.

Shortly after Chatman began the orientation process for employment with Wellstar, her mother suffered a stroke. As a result, Chatman decided to seek weekend work so she could be available to care for her mother during the week. On October 4, 2004, Chatman informed Mansfield of her family circumstances and asked if the Infusion Center had any available weekend positions. Mansfield made Chatman aware of an upcoming Weekend Option position, which requires twelve-hour shifts on both weekend days.

Chatman expressed interest in the position, and Mansfield encouraged her to apply. Mansfield told Chatman that she did not expect anyone other than Chatman to apply for the position, and she thought Chatman had a good chance of being hired by virtue of being the only applicant.

Several nurses from Wellstar's IV department around this time began to explore the possibility of changing positions within the company. When Mansfield posted the Weekend Option position, these nurses applied, creating more competition for the position than Mansfield had expected. Among the applicants was Frances Jenkins, a full-time nurse in Wellstar's I.V. department ("Jenkins"). Jenkins had nearly twenty years of nursing experience, including significant experience in the I.V. department as well as experience as an infusion specialist for

other employers. At the time Jenkins applied, she was already working a Weekend Option position. Mansfield interviewed and ultimately hired Jenkins for the Weekend Option position.

Mansfield considered Jenkins more qualified than Chatman for the Weekend Option position due to her greater overall nursing experience and strong support among the Infusion Center's nursing staff. Mansfield also believed that Jenkins would remain in the position longer.

While both Jenkins and Chatham had experience as infusion specialists, Jenkins had extensive additional experience in the I.V. department. Mansfield testified that she considered I.V. Department work to require "almost identical" skills as would be required in the Infusion Center. Mansfield believed that the Infusion Center nursing staff knew of Jenkins's reputation, and trusted and respected her work. She also learned that the Infusion Center staff did not feel they had known Chatman long enough to form a reliable professional opinion of her.

Mansfield considered long-term retention important to the position. Mansfield's experience taught her that Weekend Option positions were hard to fill, because nurses often cycled out of the position soon after they were hired because they realized that working long hours all weekend was incompatible with their

interests, obligations, or lifestyle preferences.  Mansfield therefore considered it important to find someone she could count on to stay engaged in the position for an extended period of time.  Jenkins had worked Weekend Option positions before, and had a proven record of being willing to maintain the weekend schedule required for the position.  Mansfield believed that Chatman, by contrast, wanted the position primarily to cope with the scheduling difficulties of her family situation, which she believed would likely be temporary.

When Chatman was informed that she had not been hired for the Weekend Option position, she complained to Human Resources that she was more qualified than Jenkins.  In response to the complaint, Donnie Burton ("Burton"), Mansfield's supervisor, created and offered to Chatman a second Weekend Option position.  Chatman declined to accept this offer.

On December 20, 2005, Chatman filed the present suit, alleging that Mansfield did not select her for the Weekend Option position because of her race.  Wellstar filed a Motion for Summary Judgment on all Chatman's claims, which the R&R recommended be granted.  The R&R specifically found that Chatman failed to show pretext as to Mansfield's primary two reasons for hiring Jenkins: that Jenkins was better qualified and respected by the Infusion Center nurses, and that

Jenkins had better long-term retention prospects in the Weekend Option position. Chatman objects to those specific findings.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 127 S.Ct 1769, 1776 (2007)

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  <u>United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.</u>, 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  <u>Graham</u>, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  <u>Herzog</u>, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

    B.    <u>Pretext</u>

Because Chatman's claims are based on circumstantial evidence of discrimination, they are analyzed under the familiar burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973).  If Chatman successfully makes a *prima facie* showing of discrimination, she raises an inference of discriminatory intent, and the burden of production shifts to Wellstar to rebut this inference by articulating a legitimate, non-discriminatory reason for its

actions.  Id.  If Wellstar successfully rebuts the inference of discrimination by raising a non-discriminatory reason, the burden of production shifts back to Chatman to show that this reason is mere pretext.  Id.  The burden of proof remains at all times on Chatman.  Id.

In this case, the R&R found and the parties conceded that Chatman has shown a *prima facie* case of discrimination and that Wellstar has successfully rebutted it with several legitimate, non-discriminatory reasons.  The sole dispute raised in Chatman's Objection concerns the R&R's finding that Chatman failed to show that Wellstar's reasons were pretextual, specifically Mansfield's opinion that Jenkins was more qualified and more likely to remain in the Weekend Option Position.

To prove pretext, a plaintiff must introduce "significantly probative evidence . . ." Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006).  The evidence must meet the employer's proffered reason "head on and rebut it." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).  "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" Brooks, 446 F.3d at 1163.  To show falsity, Chatman must show that Wellstar's reasons suffer "such

-8-

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that "a reasonable factfinder would find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (citation and quotation omitted). Where the proffered reason is that the selected candidate had greater qualifications, the plaintiff must show that her qualifications are of such relatively superior "weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Brooks, 446 F.3d at 1163 (quotation and citation omitted).

      Chatman first argues that she is more qualified and has more relevant experience than Jenkins in infusion therapy. Chatman argues that Jenkins's experience in the I.V. Department is not relevant, as I.V. Department nurses require different skills than infusion therapy nurses.

      This argument, even if true, does not support a finding that Mansfield's statements about Jenkins's superior qualifications were pretextual. Chatman had six years of experience in nursing. Jenkins had nearly twenty. Chatman had two years of experience in infusion therapy. Jenkins, however, also had experience in infusion therapy work, and additionally had significant experience in Wellstar's I.V. Department. Even if the Court credits Chatman's factually unsupported

argument that I.V. Department work requires a different skill set than Infusion Center work, Chatman does not offer any evidence that the skill sets are so different that it was unreasonable for Mansfield to consider Jenkins's I.V. Department experience material to the hiring decision.[1]  Jenkins had direct experience with infusion work, vastly greater experience in general nursing, and significant experience in the related field of I.V. nursing,.  The record supports strongly that Jenkins was a highly qualified choice for the Weekend Option job, and that it was reasonable for Mansfield to conclude that she was the most qualified choice.  Chatman fails to show that the difference in qualifications between her and Jenkins was such that no reasonable person could have picked Jenkins.

Chatman next argues that the Court should not believe Mansfield's claim that nurses showed greater support for Jenkins because they knew her better and respected her work.  Chatman argues that because she had recently done her orientation in the Infusion Center, where the nurses had praised her work, while

---

[1] The Magistrate Judge also observed that Chatman has failed to show that I.V. Department work was substantially different from Infusion Center work, and thus that it was unreasonable to Mansfield to credit Jenkins's I.V. Department work as particularly relevant experience.  The Court agrees with this observation.

Jenkins worked in a different department altogether, Mansfield's claim that the Infusion Center nurses preferred Jenkins should not be believed.[2]

The preference of the other Infusion Center nurses was only one subcategory of Mansfield's qualification reasoning. Even if Mansfield was found to have exaggerated the Infusion Center nurses' opinion of Jenkins it would still have been reasonable for Mansfield to conclude that Jenkins the more qualified candidate based on her superior experience.

It is undisputed that the Infusion Center nurses told Mansfield that they had not known Chatman long enough to evaluate her work. Even though Chatman argues that she had just undergone a successful orientation with those nurses, this fact does not compel the conclusion that those nurses were as familiar and comfortable with her work as they were with Jenkins's, particularly considering that Jenkins had worked at Wellstar for a number of years. Chatman admits that the nurses at the Infusion Center were at least familiar with Jenkins's general reputation. Chatman has offered no evidence to show that this reputation was

---

[2] It is unclear whether Chatman argues that Mansfield's claim about the nurse's sentiments should be disbelieved, or that the nurses themselves influenced Mansfield to make a racially-based decision. Either way, Chatman's argument fails.

anything other than good. Chatman thus fails to show that this element of Mansfield's hiring decision was incredible or inconsistent such that a reasonable person would find it pretextual.

Chatman next argues that Mansfield's claim that Jenkins was more likely to stay in the Weekend Option position is pretextual. Chatman argues that Mansfield was not concerned about Chatman's longevity in the Weekend Option position until Jenkins, a white candidate, came along.

Chatman admits that Weekend Option spots were difficult for Wellstar to fill, and that Mansfield did not anticipate receiving any applications other than Chatman's. Chatman also admits she told Mansfield that she wanted the Weekend Option position so she could care for her mother during the week. It is undisputed that Chatman never worked a Weekend Option position and that Jenkins was working one at the time she applied.

These facts support the conclusion that Mansfield's reason was not pretextual. Although Mansfield anticipated that only Chatman would apply for the Weekend Option position, she ultimately received several applications, giving her the unexpected ability to choose from several competing qualified candidates. Mansfield elected to hire Jenkins, whose experience with the Weekend Option

schedule proved her to be the candidate most likely to have the greatest longevity in the position. Chatman does not offer any fact to rebut this reasonable, common-sense judgment.

### III. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [42]. Defendant's Motion for Summary Judgment [34] is **GRANTED**. The Clerk is directed to **CLOSE** this case.

**SO ORDERED** this 10th day of July, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE